S. Peter Serrano
United States Attorney
Eastern District of Washington
Michael D. Murphy
Courtney R. Pratten
Assistant United States Attorneys
402 E. Yakima Avenue, Suite 210
Yakima, Washington  98901
(509) 454-4425

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>JASON ALEXANDER LOGIE,<br><br>Defendant. | 1:24-CR-02059-SAB<br><br>PLAINTIFF'S SENTENCING MEMORANDUM |

The United States of America, by and through S. Peter Serrano, United States Attorney for the Eastern District of Washington, and Michael D. Murphy and Courtney R. Pratten, Assistant United States Attorneys, hereby submits the following Sentencing Memorandum.

Defendant was convicted of Second Degree Murder as charged in the Indictment (ECF 1) filed August 13, 2024, following a jury trial held August 18-20,

2025. ECF 54, 56, 58, 60.

I.       BASE OFFENSE LEVEL AND ENHANCEMENTS

The draft PSIR provides for a total offense level of 38, criminal history category of II, with a Guideline range of incarceration of 262 to 327 months to be followed by 2 to 5 years of supervised release. Draft PSIR, ECF 63, ¶ 110.

The United States does not agree with the calculations in the Draft PSIR and contends that the total offense level should be 40, which, with a criminal history category of II would result in a Guideline incarceration range of 324 to 405 months to be followed by 2 to 5 years of supervised release. As outlined in the United States' objections to the draft PSIR, ECF 63, the prosecution does not agree that Defendant is entitled to a two-level reduction for acceptance of responsibility.

II.      DEPARTURES AND OBJECTIONS

The United States does not seek any departure in this matter or, alternatively, any variance. The United States objects to ¶¶ 16-17 and 27 of the Draft PSIR, ECF 63. Because Defendant has consistently contested the factual issue of *mens rea* and strategically argued for a conviction to a lesser offense, he is not entitled to a downward adjustment for acceptance of responsibility.[1]

The Guidelines are the starting point and the initial benchmark for the

---

[1] This case stands in contrast to that of *United States v. Nathan Lynn Cloud*, 1:22-CR-2027-SAB, where the defendant went to trial and was convicted of a lesser included offense, simple possession of narcotics, after being charged with possession with intent to distribute narcotics. In that matter, the PSIR (ECF 127) found and the United States did not disagree (ECF 126) that the defendant was entitled to credit for acceptance of responsibility for the crime of conviction where his defense was premised upon guilt of a lesser offense, only.

GOV'T SENT. MEMO.                             2

sentencing process. *Kimbrough v. United States*, 128 S. Ct. 558 (2007). The Court "take[s] into account the totality of the circumstances" to determine whether a sentence is reasonable. *Gall v. United States*, 128 S. Ct. 586, 597 (2007). Upon appellate review, "the scheme of downward and upward 'departures' [is] essentially replaced by the requirement that judges impose a 'reasonable' sentence." *United States v. Ellis*, 641 F.3d 411, 421 (9th Cir. 2011). A reasonable sentence under the facts of this case is one at the high end of the appropriate Sentencing Guideline range, that of 405 months imprisonment.

III.    SENTENCING FACTORS UNDER 18 U.S.C. §3553(a)

1. <u>The nature and circumstances of the offense and the history and characteristics of Defendant.</u>

The Court has heard the testimony of S.H., the survivor of the collision caused by Defendant on September 9, 2023, as well as the testimony of J.H., a witness from a following vehicle, as well as testimony from responding law enforcement and emergency personnel. At about two in the afternoon on a clear, dry day, Defendant crossed the center line of a straight, level and well-paved portion of North Track Road on the Yakama Nation and struck the oncoming vehicle driven by B.H. and occupied by his wife, S.H.. The parties stipulated that the collision caused the death of B.H. and the Court heard Defendant's statements to law enforcement after the collision in which he admitted drinking prior to attempting to drive. The testimony of witnesses was corroborated by the professional analysis of Washington State Patrol Detective

Sergeant James Parzych, who confirmed the collision occurred in the oncoming lane of traffic after Defendant crossed the center line of the roadway.

Beyond the fatal event of September 9th, the Court learned from his testimony at trial that Defendant is a 37-year-old man with some college education who has lived most of his life in the Yakima Valley. This is reflected in the draft PSIR. ECF 63, p. 2, ¶¶ 65, 80. He has a history of driving under the influence of alcohol dating back to the age of 19, when he was convicted of driving under the influence while in college in Kansas in 2007. *Id.* at ¶¶ 33-34. Defendant was convicted of First Degree Negligent Driving, pled down from Driving Under the Influence, in Wapato Municipal Court the following year. *Id.* at ¶¶ 35-37. Three years later, at age 22, Defendant was again convicted of First Degree Negligent Driving, amended from a charge of Driving Under the Influence, in East Klickitat District Court. *Id.* at ¶¶ 38-41. Defendant also received a deferred sentence for Driving Under the Influence on March 28, 2013, from Union Gap Municipal Court. *Id.* at ¶¶ 47-50. Defendant received a second deferred sentence for Driving Under the Influence from the Yakama Nation Tribal Court in 2018. *Id.* at ¶¶ 51-53. This was followed by a third deferred sentence for Driving Under the Influence, Physical Control, from the Yakama Nation Tribal Court based upon a DUI incident from December 26, 2022, when Defendant drove his vehicle into a canal. *Id.* at ¶¶ 53-54. Defendant was subject to conditions of supervision pursuant to that deferred sentence at the time of the September 9, 2023, fatal collision, and the Court heard testimony at trial from Yakama Nation Probation Officer Angeline

Phillips about both his lack of compliance with those conditions and how she did not believe he was taking the process seriously.

In addition, Defendant was subject to conditions of release on a charge of Driving Under the Influence, Physical Control in Yakima County District Court case 2A0272490, imposed September 21, 2022. As demonstrated in trial exhibit 31, and confirmed by Defendant's own testimony, those conditions included the requirement that any vehicle he drove have an ignition interlock device preventing the vehicle's operation while under the influence of alcohol. *See also*, ECF 63, ¶ 43. As established at trial, the vehicle Defendant was driving on September 9, 2023, had no ignition interlock device installed. Defendant testified at trial that he understood the function of an ignition interlock device and told the jury that he had an appointment to obtain one prior to driving his vehicle into a canal in December of 2022.

Testimony at trial also reflected that Defendant completed drug and alcohol awareness training through the Yakama Nation TiinAwit program in 2010 as a condition of probation resulting from his first Driving Under the Influence Conviction. He completed outpatient treatment through the Yakama Nation TiinAwit program in 2019 as a condition of his second deferred prosecution. In addition, he attended outpatient treatment through Merit resources as part of his 2013 deferred prosecution from Union Gap Municipal Court.

"[A] sentencing court may rely on any evidence relating to a defendant's background, character, and conduct when considering the sentencing factors found

in 18 U.S.C. § 3553(a)." *United States v. Christensen*, 732 F.3d 1094, 1104 n. 2 (9th Cir. 2013). Sentencing courts are permitted to consider the widest possible breadth of information about a defendant to ensure that the punishment will suit not only the offense, but also the individual defendant. *Pepper v. United States*, 562 U.S. 476, 488 (2011). Accordingly, by statute Congress directs that "[n]o limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence." 18 U.S.C. § 3661. Even "a jury's verdict of acquittal does not prevent the sentencing court from considering conduct underlying the acquitted charge, so long as that conduct has been proved by a preponderance of the evidence". *United States v. Watts*, 519 U.S. 148, 157 (1997) (*per curiam*).  Here, extensive information demonstrates repeated efforts by courts of various jurisdictions to provide Defendant with a range of tools to confront and deal with his alcoholism and opportunities to avoid punitive consequences and maintain his employment and freedom, all to no avail.

In addition to Defendant's repeated convictions for driving while under the influence of alcohol, and more important to the measure of his conduct on September 9, 2023, is his record of regular disregard for conditions of pretrial release, probation, or supervision. Defendant failed to appear in 2009 in his first probationary period. ECF 63, ¶ 34. He failed to appear three times and failed to comply one time from 2008 through 2010 in his second probationary period. *Id.* at ¶

37. Defendant failed to comply with conditions of probation several times in his third probationary period and failed to appear on one occasion. *Id.* at ¶ 41. His disregard of the requirements of probation and substance abuse treatment led to the issuance of two warrants and two notices, as well as two sanctions of thirty days jail, one sanction of fifteen days jail, and a sanction of 45 days of location monitoring as well as probation ultimately being revoked. *Id.* During the Defendant's five-year period of deferral imposed for his fourth alcohol related driving conviction, he failed to comply several times and failed to appear at hearings three times, resulting in the issuance of five summons and three warrants. *Id.* at ¶ 50. Significantly, while his deferred sentence was dismissed as completed on June 20, 2018, a warrant was issued on May 2, 2018, based upon Defendant's failure to appear for a charge of driving under the influence incurred in Kansas in November of 2017. *Id.* at ¶¶ 47, 57-58.[2] In 2018, Defendant was again given a deferred prosecution by the Yakama Nation Tribal Court. He successfully completed that period of supervision and was discharged on October 17, 2019, as being in full compliance. *Id.* at ¶¶ 51-52. However, in 2022 he was charged with two separate crimes related to driving under the influence, one in September and the other in December. *Id.* at ¶¶ 42, 53. He was on warrant status for the September 2022 incident at the time of the fatal collision on September 9, 2023. *Id.* at ¶ 44. In

---

[2] The granting of a deferral and dismissal of his Klickitat County case despite incurring new charges for DUI out of state raises a strong implication that Defendant did not behave with candor toward his probation officer or the Klickitat County District Court.

GOV'T SENT. MEMO.                    7

total, Defendant had at least twenty-one failures to appear or failures to comply with supervision or treatment in multiple periods of supervision before he killed a man while driving under the influence of alcohol.

2. <u>The need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, and to provide just punishment.</u>

No sentence imposed under the law will change the lasting impact the death of B.H. will have on his family. Defendant's actions and choices on September 9, 2023, and the consequences of those actions are gravely serious and his behavior is a reflection of his bold disrespect for the law. While acknowledging just punishment, from the perspective of the victims, can never be obtained, a high-end Guideline sentence of 405 months is appropriate to reflect the seriousness of the unlawful taking an innocent life. Further, Defendant's consistent pattern of both disregarding court orders and sanctions, and the fact that he was in violation of conditions imposed by two separate jurisdictions when he killed B.H. by driving under the influence of alcohol and losing control of his vehicle, demonstrates that a sentence of 405 months, is justified to promote respect for the law.

3. <u>The need for the sentence imposed to afford adequate deterrence to criminal conduct.</u>

Defendant's disregard of conditions of probation and efforts at rehabilitation through court-mandated alcohol treatment, culminating in his killing a man while violating conditions of both pre-trial release and a deferred sentence for prior

instances of driving under the influence of alcohol, demonstrates that a sentence of 405 months, which is at the high end of the applicable guideline range, is necessary and required for adequate deterrence. Defendant has not been deterred by lesser consequences, he repeatedly and knowingly disregards opportunities for rehabilitation, and now his actions have ended a life. Deterrence is necessary for Defendant as well as for other similarly situated individuals who place themselves and the public at risk when they repeatedly drink and drive.

    4. <u>The need for the sentence imposed to protect the public from further crimes of Defendant.</u>

Prior conduct, even remote in time, can demonstrate an increased danger of recidivism. *United States v. Garner*, 490 F.3d 739, 743 (9th Cir. 2007). Defendant's history of driving under the influence of alcohol throughout his adult life, ultimately causing a fatal collision less than a year after he drove his car into a canal while intoxicated, demonstrates the danger he has posed and will continue to pose to the public. In this case, the properly calculated Guideline sentence of 405 months is both reasonable and necessary to protect the public from further crimes by Defendant. No other members of the public or their families should again have to pay the price for Defendant's cavalier attitude towards drinking and driving.

    5. <u>The need for the sentence imposed to provide Defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.</u>

A sentence of 405 months imprisonment would provide Defendant with

effective correctional treatment, including the opportunity to complete the Bureau of Prison's Residential Drug Abuse Program.

## IV. RESTITUTION

Restitution is appropriate and mandatory, without regard to Defendant's economic situation, to identifiable victims who have suffered physical injury or pecuniary loss, pursuant to 18 U.S.C. §§ 3663, 3663A, 3664. Pursuant to 18 U.S.C. § 3664(d)(5), provides that "the court shall set a date for the final determination of the victim's losses, not to exceed 90 days after sentencing." The United States has recently been made aware of restitution requests of more than $26,000 related to out-of-pocket expenses for medical bills; however, additional restitution to the Crime Victims Compensation Program may be appropriate. The United States requests that the Court set a restitution hearing in approximately 60 days in order to determine appropriate restitution and to provide an opportunity for restitution claims and supporting documentation be made available for Defendant's review.

## V. GOVERNMENT'S SENTENCING RECOMMENDATION

The government recommends that the Court impose a sentence of incarceration of 405 months followed by a term of supervised release of 5 years and no criminal fine. Defendant must pay a $100 Special Penalty Assessment. Restitution is mandatory.

DATED this 3rd day of November, 2025.

S. PETER SERRANO
United States Attorney

s/Michael D. Murphy
MICHAEL D. MURPHY
COURTNEY R. PRATTEN
Assistant United States Attorneys

# CERTIFICATE OF SERVICE

I hereby certify that on November 3, 2025, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System, and a copy was emailed to the counsel of record in this case.

s/ Michael D. Murphy
Michael D. Murphy
Assistant United States Attorney
United States Attorney's Office
402 E. Yakima Ave., Suite 210
Yakima, WA 98901
(509) 454-4425
Fax: (509) 249-3297